I. Martin **SPIER**, Petitioner,

v.

**CALZATURIFICIO TECNICA S.p.A.**, Respondent.

No. 86 Civ. 3447 (CSH).

United States District Court, S.D. New York.

June 29, 1987.

Pavia & Harcourt, New York City (David A. Botwinik, David G. Glasser, of counsel), for petitioner.

Holtzmann, Wise & Shepard, New York City (R. Nicholas Gimbel, Kathy Dutton Helmer, Paula C. Dicks, of counsel), for respondent.

## MEMORANDUM OPINION

HAIGHT, District Judge:

This is a petition to enforce an arbitration award rendered in Italy. Respondent cross-moves to dismiss the petition, or in the alternative to stay decision pending resolution of respondent's challenges to the award in the Italian courts. Subject matter jurisdiction derives from the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 21 U.S.T. 2517, TIAS 6997 (1970) (the "Convention")[1], im-

plemented by 9 U.S.C. §§ 201–208. Respondent does not contest the venue.

### I.

Petitioner I. Martin Spier is an engineer and citizen of the United States, resident in New York City. Respondent Calzaturificio Tecnica, S.p.A. ("Tecnica") is an Italian corporation headquartered in Treviso, Italy. In 1969 Spier and Tecnica entered into a written contract in which Spier agreed to furnish Tecnica with expertise for the manufacture of plastic footwear and ski boots, in exchange for the payment of certain fees by Tecnica. The contract contained a provision providing for the resolution of disputes by a panel of three arbitrators in Italy.

Disputes arose. After protracted proceedings, on October 15, 1985 the arbitrators rendered a unanimous award in Spier's favor. The award directed Tecnica to pay Spier one billion Italian Lire, the equivalent at the time of filing of the present petition of U.S. $672,043, plus interest at the rate of 15% from January 1, 1985.

Tecnica has not paid that award. Instead, on November 20, 1985 Tecnica commenced litigation in an Italian court in Treviso to challenge the validity of the award. Spier has not appeared in the Italian action. Instead, he filed the captioned petition in this Court on June 23 1986. Tecnica then filed the cross-motion summarized above. Both sides have submitted voluminous affidavits of counsel which attach as exhibits the texts of Italian statutes, decisions of Italian and German courts, and law journal articles.

### II.

9 U.S.C. § 203 gives the district courts of the United States subject matter jurisdiction over an "action or proceeding falling under the Convention ..." Section 207 provides:

"Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may

---

1. Because the Convention was drafted in New York under United Nations sponsorship, it is sometimes referred to in the literature as the "New York Convention."

apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

The "grounds for refusal or deferral of recognition or enforcement" of an award falling under the Convention, incorporated by reference in the last sentence of § 207, appear in articles V and VI of the Convention, set forth in a note following 9 U.S.C. § 201. The following provisions are pertinent to the case at bar:

"Article V

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or ...

(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decisions on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contain decisions on matters submitted to arbitration may be recognized and enforced; or ...

(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

\* \* \* \* \* \*

Article VI

If an application for the setting aside or suspension of the award has been made to a competent authority referred to in article V(1)(e), the authority before which the award is sought to be relied upon may, if it considers it proper, adjourn the decision on the enforcement of the award and may also, on the application of the party claiming enforcement of the award, order the other party to give suitable security."

### III.

Tecnica cross-moves to dismiss Spier's petition on several grounds.

First, Tecnica contends that under Italian law the form of arbitration agreed to by the parties does not give rise to a binding arbitral award of the sort entitled to enforcement by summary proceedings under the Convention. Tecnica bases that argument upon Article V(1)(e) of the Convention.

Second, Tecnica contends that the entire contract between the parties, including its arbitration clause, is invalid because it violated an Italian currency exchange statute requiring prior governmental approval of such transactions between Italian and foreign residents. In that regard, Tecnica relies upon Article V(1)(a) of the Convention.

Third, Tecnica contends that the arbitrators exceeded their proper functions, in violation of Article V(1)(c) of the Convention.

In its challenge to the award before the Italian court, Tecnica makes arguments comparable to and proceeding from the second and third contentions in support of its cross-motion here.

In those circumstances, Tecnica asks in the alternative that this Court stay its decision on the cross-motions until the Italian courts have adjudicated Tecnica's challenges to the award. In that regard Tecnica relies upon Article VI.

### IV.

The issue of whether the Italian arbitrators' award in this case falls within the Convention as an enforceable award implicates the distinction in Italian law between different kinds of arbitration. Specifically,

Tecnica's Italian counsel, Professors Giorgio Bernini and Domenico Borghesi, distinguish in their affidavits between "arbitrato rituale", or "procedural arbitration", and "arbitrato irrituale", or "contractual arbitration." The case for Tecnica is that whereas an "arbitrato rituale" gives rise to an award challengeable in the Italian courts only on the most limited grounds, an "arbitrato irrituale" results only in "what is considered as a contract to which the parties have agreed", and is accordingly subject under Italian law to a much wider range of defenses.

Tecnica argues at bar that the arbitration procedure contained in its contract with Spier constitutes an "arbitrato irrituale." As such, Tecnica argues, the arbitration proceedings under the contract did not give rise to an "award" which is "binding" within the meaning of Article V(1)(e) of the Convention.

To the extent that I comprehend these relatively esoteric concepts, it would appear that the parties agree that they participated in an "arbitrato irrituale." The bone of contention is whether the award generated by such a procedure is a binding award entitled to enforcement under the Convention.

On that issue, Tecnica has submitted declarations of its Italian counsel; a sworn statement of Professor Pieter Sanders of the Netherlands, a principal draftsman of the Convention; a 1979 Opinion of the Secretary General of the United Nations; a number of Italian court decisions; and a decision rendered by the Bundesgerichtshof of the Federal Republic of Germany on October 8, 1981, which Tecnica says is the "only case which has considered the effect of arbitrato irrituale conducted in Italy under the ... Convention", main brief at 24. That case does indeed to say that an "irrituale" award made under Italian law does not fall within the Convention. And Professor Sanders states in his declaration at 8–9:

> "The purpose of the New York Convention was and is to facilitate recognition and enforcement of foreign arbitral awards in the proper sense.... The introduction of the term "binding" was certainly not intended to open the door for *arbitrato irrituale* or similar alternative methods of private settlement, which are not supported by the same statutory guarantees for proper proceedings as is the case for arbitration."

On the other hand, Spier cites and proffers translations of a number of Italian court decisions which appear to characterize an arbitrato irrituale as falling under the Convention. Reply brief at 6–7; exhibits to Glasser affidavit. One of these, the judgment of Italy's Supreme Court (the "Corte Di Cassazione"), decided on September 18, 1978, No. 4167, was described thus by Professor Bernini himself in a recent article: "the Supreme Court of Cassation went so far as to explicitly hold that even *arbitrato irrituale* falls with [sic; no doubt should be "within"] the scope of the New York Convention." Bernini, *Domestic and International Arbitration in Italy after the Legislative Reform*, 5 Pace Law Review, 543, 554 (1985). Bernini goes on in that article to describe the effect of 1983 Italian legislation upon the distinction between procedural and contractual or "free" arbitration in Italy.

As for Tecnica's second claim, that the underlying contract between the parties is invalid under Italian laws of currency regulation, the parties again exchange contentions whose proper resolution depends upon first comprehension, and then application of Italian law.

## V.

Given these circumstances, there is much to be said for Tecnica's alternative motion, grounded upon Article VI of the Convention; that this court "adjourn" its decision on enforcement pending resolution of Tecnica's challenges to the award before the Italian courts.

An Article VI adjournment (or stay) of enforcement proceedings pending a challenge to an award in the country where it was rendered has not given rise to much jurisprudence in the United States. Clearly the remedy is discretionary with the district courts. Article VI says that the en-

forcing court "may, if it considers it proper," adjourn its enforcement provision for that purpose. At least one American court has exercised its discretion in that manner.[2]

The positions of the parties in the case at bar are entirely predictable. Spier condemns Tecnica's Italian litigation as frivolous and intended solely for the purpose of harassment and delay. Tecnica says that its challenges under Italian law to the award are meritorious and will undoubtedly prevail. One would be astonished if trial counsel for either party in this country said anything else.

Of course I accept in principle that the court in which enforcement of a foreign arbitral award is sought should not countenance manifestly frivolous attacks upon the award in the country where it was made. At the same time, one must recognize that the Convention, itself a compromise between national interests and international aspirations, specifically provides that the foreign award will not be enforced if the award "has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made." Article V(1)(e). That is so even if the (in contrast to the case at bar) the foreign award is facially binding on the parties, as the disjunctive "or" in Article V(1)(e) makes clear. Here Tecnica has, in fact, asked the Italian courts, which constitute the "competent authority" of the country in which the award was made, to set that award aside.

Without plumbing the speeches of the Convention delegates to their depths, it seems fair to assume that the Convention would have failed of achievement if it did not provide for a successful challenge in the country of issuance as a ground for non-enforcement in a foreign country. But that basis for refusal of enforcement would have been nullified if the Convention did not also empower the courts of the country where enforcement is sought to at least consider the pendency of a challenge in the country of issuance. That is the office performed by Article VI.

In the case at bar, I do not conceive the Italian courts to be presented with the question of whether this "arbitrato irrituale" falls within and is enforceable under the Convention. That question, although it arises here, would not seem to arise in Italy, since the award was rendered in Italy and is challenged in the Italian courts. But clearly the Italian courts must consider under Italian law the nature of the award, and the permissible scope of the challenges Tecnica may assert against it, including the alleged invalidity of the entire contract. I would deny Article VI adjournment of the enforcement proceedings here only if I were satisfied that Tecnica's litigation position in Italy was transparently frivolous. I cannot reach that conclusion on the present record. That being so, it is better to permit the validity of this Italian arbitral award to be first tested under Italian law by Italian courts. That is preferable to an American court seeking to apply the law of the foreign country where the award was made, and entering an order enforcing an award later condemned by the courts of that foreign country.

Accordingly I will defer enforcement proceedings here subject to the conditions discussed *infra*.

## VI.

Article VI of the Convention provides that the enforcement court "may also, on

---

**2.** *Fertilizer Corporation of India v. IDI Management, Inc.*, 517 F.Supp 948, 961–63 (S.D.Ohio 1981), reconsideration denied, 530 F.Supp (S.D. Ohio 1982).

In the case at bar, Spier contends that notwithstanding pendency of the Italian proceedings, he is entitled to an order of enforcement now under the authority of *Waterside Ocean Navigation Co., Inc. v. International Navigation Ltd.*, 737 F.2d 150 (2nd Cir.1984). It is true that in affirming enforcement of a London arbitration under the Convention, the Second Circuit observed that the losing party had protracted the dispute, "resisting confirmation of the award by litigation in three countries: England, Canada, and the United States." *Id.* at 153. However, the Second Circuit's opinion does not recite the particulars of that litigation, and makes no reference to adjournment of enforcement proceedings under Article VI of the Convention. In the case at bar, I conclude that relief under Article VI is appropriate subject to the terms and conditions discussed *infra*.

the application of the party claiming enforcement of the award, order the other party to give suitable security." Neither party at bar has briefed the question of security. Accordingly I will not pronounce upon it now. But my present inclination is to require Tecnica to show cause why it should not be required, as a condition for adjournment of these proceedings, to post security in the United States for the full amount of Spier's award together with interest and allowable costs and fees, should Spier ultimately prevail in the proceedings here.

An additional complication arises out of the claim by Spier's counsel[3] that Spier is impecunious and unable to afford representation by counsel in the Italian litigation. Meaning no disrespect, I cannot accept counsel's *ipse dixit* on that point; and some doubt would appear to be cast by Spier's statement in a deposition in the case at bar that he was about to depart for Italy on his third trip that year. But I will permit Spier, if so advised, to include in his motion papers for the fixing of security a sworn declaration of his inability to afford Italian court costs and counsel's fees. In the event of such a claim of financial inability, Tecnica will be entitled to some discovery on the point, including a verified statement of assets and liabilities and limited access to Spier's most recent income tax returns. If Spier establishes that he is economically unable to participate in the Italian litigation, then I will invite further briefs of counsel on the effect, if any, that fact should have upon my exercise of discretion under Article VI.

## VII.

For the foregoing reasons, these proceedings are adjourned pending the Court's further order.

Counsel for Spier may serve and file motion papers addressing the issue of security and related questions whenever they wish. Counsel for Tecnica are directed to file and serve answering papers within ten (10) days after service of such papers upon them. Counsel for Spier may serve reply papers within seven (7) days if so advised. The Court will advise counsel if oral argument is required.

The foregoing is SO ORDERED.

---

**3.** The affirmation of poverty appears in Spier's petition at ¶ 14. That petition is signed by counsel. It is not supported by an affidavit or sworn declaration of Spier himself.